Before the Third Division

May 18, 1954

A. R. D. 43.—

*William G. McBeth* v. *United States.* The following memorandum, in which Johnson, Judge, concurred, accompanied the order denying dismissal of application for review and directing the case to be placed on the calendar:

MEMORANDUM TO ACCOMPANY ORDER

Ekwall, Judge: This case is before us on two motions, one filed by the appellee for dismissal of the application for review of a decision of May 20, 1952 (Reap. Dec. 8114), on the ground that the application for review is untimely. Appellant also filed a motion, referred to *infra*.

The facts as they appear of record are as follows: The appeal for reappraisement was decided on May 20, 1952, (Reap. Dec. 8114). Said decision and judgment were duly forwarded to the collector of customs at New Orleans, the port of entry, and received by that office on May 23, 1952. An application for review of said decision was filed

with this court on June 18, 1952. Thereafter, it was called to counsel's attention that, under the statute (28 U. S. C. (1948 rev.) sec. 2636 (a)), said application for review should have been filed with the collector of customs at the port of entry. Counsel thereupon, on June 18, 1952, caused an application for review to be forwarded to the collector at New Orleans with an airmail stamp and a special-delivery stamp attached. However, the special-delivery stamp placed thereon was valued at 15 cents whereas the proper stamp at the time of such mailing was one valued at 20 cents. Upon arrival at New Orleans, the letter, which at that time bore the usual notice of postage due, indicated by a 5-cent stamp on the face thereof, was refused by the customs officers. The record shows that such refusal was due to the fact that no fund was provided customs officials for payment of such insufficient postage mail. Because of such refusal and nondelivery, the application for review was returned to the sender, counsel in this case, who caused another envelope to be prepared in which the still unopened application in its original envelope was returned to the collector at New Orleans by regular mail, together with the request that the same be received as having been filed on the date of its original receipt in New Orleans. That request was denied by the customs officials, and the application was marked as having been received on July 7, 1952. The original envelope was offered and received in evidence as exhibit App. 6.

Because of the above untimely receipt of the application, it is claimed on behalf of the Government that the application is untimely, and Government counsel moved to dismiss the same.

Appellant contends that because the original envelope had affixed thereto a 6-cent airmail postage stamp, it should have been treated as a regular airmail letter and delivered to the collector in the course of regular mail. Had such a course been pursued, he contends, and it does not seem to be disputed, the application would have been received within the statutory time.

While this presents an interesting question, it is not supported by a citation of post-office regulations or a showing that the course pursued was illegal. Such proof, being lacking, this court would hesitate to pass judgment upon the action of a department of the Government presumably acting under authority of the statute and regulations applicable thereto. The provision of the United States Code applicable to special-delivery mail is found in 39 U. S. C. sec. 276d (1946 ed. supp. 5) and is in the following language:

§ 276d. Special delivery; schedule of rates; types of stamps.

Mail of any class shall be given the most expeditious handling and transportation practicable and immediate delivery at the office of address when, in addition to the regular postage, a special-delivery fee is prepaid thereon by means of special-delivery stamps or ordinary postage stamps, or in such manner as the Postmaster General may prescribe, in accordance with the following schedule: * * *.

It is, therefore, apparent that other advantages in addition to immediate delivery at the office of address accrue when a special-delivery fee is prepaid. That is, the post-office department contracts with the sender not only to afford immediate or special delivery for such mail, but also provides for the most expeditious handling and transportation practicable. In the case before us, the consideration for such treatment was lacking, that is, the special-delivery fee was not prepaid by the sender. It, therefore, appears that appellant failed to pay for a service which he undoubtedly obtained, that is "the most expeditious handling and transportation practicable," and that the post-office authorities endeavored to supply immediate delivery of the mail but were unable to do so because of the refusal of the customs authorities to supply the missing postage. We know of no law that would compel or permit payment by the collector in such a case, nor has any been cited.

Under the circumstances above set forth, it would seem that the motion to dismiss might very well be granted.

However, we must consider appellant's motion that the application for review filed with the court on June 18, 1952, be deemed to be the application filed with the collector at New Orleans, and/or that an order be entered holding that such application for review was filed in compliance with the requirements of the laws relating to the filing of such applications (28 U. S. C. sec. 2636 (a)).

In support of this motion, appellant cites and relies upon the reasoning of the court in the case of *West End Auto Wrecking Co., Inc., et al.* v. *United States*, 29 Cust. Ct. 548, A. R. D. 7. There, applications for review were timely placed in the mails by the attorney for the appellants, after copies had been filed with this court and also copies served on counsel for the appellee therein. There was no record of the receipt of the duplicate originals, which had been mailed to the collector of customs at the port of entry, and in spite of the fact that the envelope bore the return address of counsel for the appellants, it was not returned to him. The court, in the memorandum accompanying its orders holding the applications were timely filed, stated that the situation may have been caused by reason of the fact that a railroad strike and embargo of mails were in effect at the time of mailing of the applications, which resulted in confusion and pile-up of mail. The reasoning of the court was as follows:

Normally, the essentials for the invocation of appellate jurisdiction are notice to the adverse party and application to the proper tribunal.

It must be remembered that the collector is not a party to a reappraisement action or proceeding in this court, even though in his capacity as collector he may initiate either an appeal for reappraisement (19 U. S. C. sec. 1501), or an application for review of the decision of a single judge on an appeal for reappraisement (28 U. S. C. sec. 2636 (a)).

The adverse party to the consignee or his agent in reappraisement matters is the United States. The United States is represented in such matters by the Assistant Attorney General in Charge of Customs litigation. 5 U. S. C. sec. 296.

Finally, the application for review is directed to the court.

With these facts in mind, it becomes quite obvious that the only reason for requiring the filing, on the part of a consignee, his agent or attorney, of such application with the collector, instead of directly with the court, is to give notice to the collector that the decision of the single judge is not final and that further proceedings are to be had. If such notice were not given, the collector might proceed to liquidate the entry and perform other administrative duties on the theory that the appraisement had become final.

Actually, aside from receiving notice and stopping further administrative action, the only other function the collector serves in connection with consignees' applications for review is as a conduit through which the applications reach the Customs Court. In fact, this would appear to be the primary function intended by the requirement of filing with the collector, notice to him being incidental thereto.

The filing of the instrument of appeal with the tribunal involved is the normal appellate procedure, as is indicated by the fact that under section 2636 (a), *supra*, in the case of applications for review taken on behalf of the United States the same are filed with or mailed to the court, notice being given to the adverse party. We are of the opinion that when the entire provision in section 2636 (a), *supra*, relating to consignees' applications for review is read as a whole it becomes apparent that it was the intention of Congress to secure this result, the collector being merely a convenient agent for this purpose. Viewed in this light, it can scarcely be considered that it was the intention of Congress to impose as a *jurisdictional* requirement the filing of consignees' applications for review with the collector. The effort seems to have been to follow the usual procedure of application to the court and notice to the adverse party, both of which were timely effectuated in these two cases. [Italics quoted.]

So, in the instant case, both the application to the court and notice to the adverse party were timely effectuated. We are in accord with the construction given to section 2636, *supra*, by the court in said A. R. D. 7. Therefore, the motion on behalf of the appellant for an order that the application filed with the court be deemed the application filed with the collector is granted, and an order will issue directing that the application be placed upon the next regular reappraisement review calendar of this division of the court for disposition in accordance with the law.